ELIZA HILL, as Administratrix, etc., of EDWARD O'DONNELL, Deceased, Respondent, v. ERIE RAILROAD COMPANY, Appellant.

Fourth Department, November 2, 1927.

Evidence — res gestæ — action for death of plaintiff's intestate who was alleged to have been willfully killed by defendant's employee — statement made after arrival of ambulance not part of res gestæ.

The complaint alleges that the plaintiff's intestate, a boy, was willfully shot by one of defendant's employees while in and about the railroad yards of the defendant.

The statement made by the intestate after the ambulance had arrived was not part of the *res gestæ*, though it was not in answer to a question, for it appears that there was a considerable lapse of time between the shooting and the arrival of the ambulance at the railroad yards.

HUBBS, P. J., and SEARS, J., dissent.

APPEAL by the defendant, Erie Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 7th day of January, 1927, upon the verdict of a jury for $5,800, and also from an order entered in said clerk's office on the 31st day of January, 1927, denying defendant's motion for a new trial made upon the minutes.

*Moot, Sprague, Brownell & Marcy [John W. Ryan* of counsel], for the appellant.

*Ward, Flynn, Spring & Tillou [William J. Flynn* of counsel], for the respondent.

CROUCH, J.    On the night of August 18, 1926, somewhere between eleven-thirty and twelve o'clock, in defendant's Ohio street freight yard in Buffalo, a boy named Edward O'Donnell was shot. He died on August 22, 1926.

The complaint herein charges that the boy's death was willfully and intentionally caused by an agent of defendant in and about its business and that such death was wholly unprovoked, unjustified and unwarranted and caused without fault on the boy's part.

Plaintiff had a verdict and defendant appeals from the judgment entered thereon and from an order denying a new trial.

Aside from the contention that the evidence was insufficient to

warrant the verdict, the point most strongly urged here relates to the admission in evidence of a statement made by the boy after the shooting. A witness for the plaintiff who on the night in question was attached to the Emergency Hospital as chaplain, testified in substance that on that night between eleven-thirty and twelve o'clock he accompanied the ambulance from the hospital to the corner of South and Ohio streets; that five minutes elapsed from the time the call was received at the hospital until the ambulance arrived at the scene; the witness looked around, saw nobody, and then stepped out of the ambulance. As he did so, he saw a man with a flashlight in his hand approaching from the neighborhood of the warehouse located in the freight yard. That man was one Vosseler, in the general employ of defendant at the time as a detective. Vosseler led witness to the place where the wounded boy lay, between two tracks, just outside of a freight car. His knees were drawn up to his chin in pain. The witness was then asked what the boy said to Vosseler; and over objection and exception was permitted to answer as follows: " He said: ' What did you shoot me for; I didn't do nothing.' "

Any extended discussion, except by the Court of Appeals itself, of the *res gestæ* doctrine as it now stands in this State, would serve no good purpose. Under the decided cases, the subject at best is a difficult one. Obscure points, such for instance as the reason for the different results reached in *People* v. *Del Vermo* (192 N. Y. 470) and *Greener* v. *General Electric Co.* (209 id. 135), where it seems impossible to distinguish the facts, should be left to be cleared up by the court of last resort which rendered the decisions. The former case is here urged as an authority by respondent and the latter by appellant.

In the *Del Vermo* case the court apparently found useful, if it did not adopt, the classification made by Wigmore (see generally 3 Wigm. Ev. [2d ed.] chaps. lvii, lviii) of declarations admitted under the broad term *res gestæ* into " verbal acts " and " spontaneous exclamations." We are concerned here with what is claimed to be an instance of the latter type. We have to ask ourselves whether the declaration in question under the circumstances shown by the evidence was the cry of a mind still so far under the influence of the shock and excitement of the occasion that it can reasonably be said to have been spontaneous and involuntary and that there could not reasonably have been temptation and opportunity for fabrication. It is probably true, within limits, that mere lapse of time between the event and the declaration is not conclusive. But unless the will for one reason or another was dormant during the interval, it is difficult " to exclude the idea of fabrication " (*Greener* v.

*General Electric Co., supra,* 138); and the longer the interval the more difficult it becomes. Here we know that the declarant was at the moment dangerously wounded and in pain. How much time had elapsed we do not know. We may fairly infer that soon after the shooting the boy's condition became known to whoever fired the shot; that someone went to a telephone, the location of which we do not know, sent a call to the hospital for an ambulance and gave some details, for with the ambulance came a priest. A definite period of five minutes elapsed between the telephone call and the arrival of the ambulance, followed by an unknown but probably short interval during which the ambulance waited until Vosseler came, and thereafter led the priest to the point where the boy lay. What the boy did, if anything, following the shooting, does not appear, though there is some indication in the evidence that when he made the declaration he was not at the point where the shooting is said to have occurred. The place between the tracks where he lay was unlighted except for a flashlight in Vosseler's hand.

It is true that the declaration here was not evoked by a question. None the less we think it was narrative. The boy's will during a very considerable interval was not dormant; he had both the ability and the opportunity to plan, coupled with a distinct grievance which presented at once temptation and inducement to speak as he did. The declaration may have stated the truth, but the circumstances of its utterance do not, to our minds, afford the degree of credit requisite to take it out of the operation of the hearsay rule. Its admission was reversible error.

Having reached this conclusion, it is unnecessary to discuss the point of insufficiency, beyond saying that if it clearly appeared that a detective in defendant's employ shot the boy, slight evidence of the extent of his authority and of the use of unnecessary force would suffice to put defendant to its defense, for the facts are known only to the defendant.

The judgment and order should be reversed on the law and a new trial granted, with costs to the appellant to abide the event.

All concur, except HUBBS, P. J., and SEARS, J., who dissent and vote for affirmance. Present — HUBBS, P. J., SEARS, CROUCH, TAYLOR and SAWYER, JJ.

Judgment and order reversed on the law and a new trial granted, with costs to appellant to abide event.